IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TINA L. DOYLE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-20-489-RAW-SPS |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Tina L. Doyle requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423 (d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing (Tr. 15, 25). She completed the eighth grade and has previously worked as a hospital cleaner and home attendant (Tr. 25, 43). The claimant alleges that she has been unable to work since December 24, 2016, due to seizures, depression, anxiety, stroke, and memory loss (Tr. 71, 105).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85, on March 1, 2019. Her applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated on July 7, 2020 (Tr. 15-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step four, he found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), except that he

limited her in the following: she could never climb ladders, ropes, or scaffolds; must avoid all exposure to unprotected heights, moving mechanical parts, and dangerous machinery; and may never operate commercial vehicles (Tr. 19). Further, he found that she can frequently engage in reaching, handling, and fingering with the right upper extremity; is able to understand, remember, and carry out simple tasks; can interact with supervisors and co-workers frequently but can never engage with the public; and is able to respond appropriately to changes in a routine work setting (Tr. 19). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, marker, routing clerk, and inspector hand-packager (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by failing to properly assess the evidence at step four, which likewise affected his findings at step five. Specifically, the claimant contends that the ALJ: (i) failed to consider the combined effects of all of the claimant's impairments, (ii) did not properly analyze the medical evidence of record; (iii) improperly assessed the RFC; (iv) improperly analyzed Dr. Ward's consultative examination as inconsistent with the record and Dr. Lynn's findings; (v) improperly analyzed the consistency and supportability of Dr. Lynn's consultative examination; and (vi) improperly analyzed the opinion of Ms. Brewer, the treating nurse practitioner, finding that it was inconsistent without substantial evidence; and (vii) ignored the claimant's subjective complaints of her seizure related symptoms.

The ALJ determined that the claimant had the severe impairments of epilepsy; migraines; depressive, bipolar, and related disorders; and anxiety and obsessive-compulsive disorders (Tr. 17). Additionally, the ALJ found the claimant's obesity to be a non-severe impairment (Tr. 18). Relevant medical records reflect that directly prior to the alleged onset date, on December 14, 2016, treatment notes from the ER indicated the claimant reported an episode of sudden confusion, weakness, lapse in memory, pain in her left side, and sluggish speech (Tr. 420, 454-460). Treatment notes from her discharge on the following day indicated that all labs, including an MRI of her brain, were normal (Tr. 435-436). The treatment notes further concluded that the claimant's history of seizures were "clinically not likely" and that the vertigo and dizziness were likely due to the claimant skipping breakfast (Tr. 435-436, 467-478). The claimant again experienced dizziness in March 2016, but the next incident of record did not occur until July 20, 2018, when the claimant visited the ER alleging that she had seizures during her sleep prior that week, felt confused, and had a headache on the right side (Tr. 449-451, 410). Treatment notes from this visit and other similar visits in 2018, where the claimant reported headaches, confusion, or dizziness, indicate that the claimant was released and encouraged to see a neurologist after she was found to be alert and oriented with no other neurological deficits and her vital signs, CT scan, range of motion, and mood and affect were all found to be normal (Tr. 388-402, 409-419, 492-498, 509-517). Notably, during an April 2020 ER visit when the claimant alleged tongue swelling and a headache, the claimant left the ER after her vital signs and motor skills were found to be normal but before a CT scan was obtained (760-763). The claimant's most recent visit to the ER occurred when the

claimant's daughter brought her in alleging that she had found the claimant with a memory deficit (Tr. 703-719). Although the claimant was awake, alert, and oriented with a normal CT scan, she was confused and had weakened motor ability and strength to all extremities (Tr. 703-719).

The claimant first visited neurologist Dr. Pedro Cardich on October 16, 2018 and alleged that she had a history of seizures from the age of nineteen, but had recently been having seizures during her sleep evidenced by waking up with tongue lesions and pain in her body (Tr. 626). During the claimant's three visits with Dr. Cardich, he observed that the claimant's orientation, memory, and other levels of consciousness were all normal but that her motor skills and sensations were diminished on her right side (Tr. 628-629, 631-642). Further testing administered by Dr. Cardich, which included an MRI and other blood work, all appeared normal (Tr. 528, 643-646). In addition to the physical testing, the claimant's mini-mental state exam, completed on December 7, 2018, showed the claimant could complete all tasks on the exam except that she could not name the date and month, could only follow two stages of a three-stage command, and had trouble with the attention and calculation portion, scoring only one out of five (Tr. 643–647).

Between January 2018 and April 2020, the claimant reported seizure activity or symptoms to her primary care provider, Jennifer K. Brewer, APRN-CNP, who performed blood testing but referred the claimant to a neurologist for further neurological testing (Tr. 534-620, 664-668, 670-674, 760-771, 720-733). Notable treatment records from Ms. Brewer include that in March of 2020 the claimant's family allegedly witnessed seizure activity on the day prior, including symptoms of altered consciousness and

unresponsiveness (Tr. 729-733).  The lab results taken from this visit appeared normal (Tr. 729-733).  Additionally, the claimant missed appointments with her neurologist, Dr. Cardich, who then asked her to find a new neurological provider (Tr. 725).  In addition to treating the claimant's seizure disorder, Ms. Brewer also treated the claimant for anxiety by monitoring and changing her anxiety medications as needed. (Tr. 534-620, 679-695, 739-750).

On April 21, 2020, Ms. Brewer offered her opinion as a treating nurse practitioner as to the claimant's abilities.  She indicated that the clamant has side effects that inhibit her ability to work, citing to the fact that she is dependent on others for transportation for necessities outside of the home (Tr. 701, 751-758).  She found that the claimant was moderately limited in applying information and interacting with others and was markedly limited in remembering information, concentrating, persisting, maintaining pace, adapting in the workplace, and managing oneself in the workplace (Tr. 753).  Additionally, as to the claimant's physical impairments, Ms. Brewer concluded that the claimant was incapable of "low stress" work, could only sit six hours out of an eight-hour day if seizure free, and could not stand or walk during an eight-hour workday (Tr. 756).  Ms. Brewer further found that the claimant could lift less than ten pounds frequently, up to ten pounds occasionally, and twenty pounds rarely but could never lift fifty pounds (Tr. 756).  In support of her assessment, Ms. Brewer additionally stated that the claimant experienced decreased vision, unsteady gait, memory impairments due to medications, and uncontrolled epilepsy (Tr. 754-758).

On April 9, 2019, Kathleen Ward, PhD performed a mental consultative examination of the claimant (Tr. 649-655). During the examination, Dr. Ward observed that the claimant arrived late for her appointment, dressed appropriately, and seemed to have a nervous demeanor (Tr. 650). Dr. Ward also noted that during several of the tests the claimant abandoned the tasks, claiming that she could not do or remember things and would not try (Tr. 650-651). Specifically, when asked the day of the week, the claimant responded she had to remember her planner but then later stated the correct date (Tr. 651). Dr. Ward otherwise found that the claimant's thought processes were logical, organized, and although simplistic, were better than the cognitive assessment would have suggested; the claimant had no bizarre thought content, had no evidence of delusion, and was oriented; and the claimant's mood and affect was not abnormal (Tr. 650-651). Dr. Ward concluded that the claimant appeared to be an "unreliable historian" that likely would be unable to handle funds awarded (Tr. 651).

On May 6, 2019, Lynelle M. Lynn, PhD performed a mental consultative examination of the claimant (Tr. 656-662). During the examination, Dr. Lynn observed that the claimant was dressed neatly and appropriately, her speech was clear with a normal rate, she had no involuntary movements, her posture and gait were normal, and she was cooperative and forthcoming (Tr. 656). After performing several tests on the claimant, Dr. Lynn noted on all but one of the tests that it was not clear that the claimant was putting forth her best effort (Tr. 659-661). On the WAIS-IV and WMS-IV testing, Dr. Lynn concluded that the claimant was resistant to subtests due to low self-esteem about her abilities but that it was unclear if the lack of motivation was due to severe depression or

true low intelligence (Tr. 659-661). On the TMT testing, Dr. Lynn found that the claimant put forth her best effort on all but part B, as it seemed it was difficult for the claimant to plan and think through the test (Tr. 660). Again, Dr. Lynn was unsure if the claimant was resistant to the TMT testing due to depression, low self-esteem, or a severely compromised memory (Tr. 660). Overall, Dr. Lynn concluded that the claimant likely had an intelligence disability, although she could not determine the extent, and that the claimant could not understand, carry out, and remember one to two step or complex instructions; sustain concentration and persist in work activity with a reasonable pace; maintain effective social interaction with supervisors, co-workers, and the public; or deal with the pressure in a competitive work setting (Tr. 659-661).

At the initial stage, state reviewing physician Dr. David Coffman found that the claimant was only limited in that she must avoid working in unprotected heights or near hazardous machinery (Tr. 92-94). On reconsideration, Dr. Herbert Meites found the same limitations cited as Dr. Coffman (Tr. 114-117). As for the mental impairments, state reviewing physician, Joan Holloway, PhD found that the claimant was able to understand, recall, and perform simple—one or two step—tasks; focus for two hour periods with routine breaks as well as pace and persist for an eight hour workday and forty hour workweek; interact appropriately with coworkers and supervisors to learn tasks, accept criticism, and attend meetings but could not tolerate contact with the public; and adapt to a work setting and some changes therein (Tr. 94-97). On reconsideration, Laura Lochner, PhD came to the same conclusions and limitations as Dr. Holloway (Tr. 117-119).

At the administrative hearing, the claimant testified that she does not drive nor has ever had a license (Tr. 43). She explained that she does not drive because she jerks and shakes in her upper body, a problem which she states has persisted since her initial seizures around age seventeen (Tr. 49-50). The claimant admitted she had not had a seizure for some time before approximately 2018 and that she stopped taking her medication a few years prior to the return of her seizures (Tr. 49-50). The claimant stated that she was, at the time of the hearing, taking her medication, but her seizures were still not well controlled (Tr. 49-50). She further stated that she had a "thin stroke" during work hours at her latest job which caused her arms and leg to go numb (Tr. 44, 52). As for her migraines, the claimant stated that they still occur but that her medication slows them down (Tr. 53). In relation to her mental impairments, the claimant stated that medication did not help her anxiety but she could not afford mental counseling (Tr. 54). The claimant reported that she can lift her arms above her head and pick up things with shaky hands, shower while sitting, microwave prepared meals, spend time watching her grandchild, lift less than ten pounds, and walk as far as the end of her driveway, at which point she begins to experience pain in her legs (Tr. 47-48, 54-59). She stated that she does not participate in the household chores, go out in public, watch tv, or use her cellphone as she sleeps most of the day (Tr. 56-59).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical record (Tr. 15-27). As for the state reviewing physicians for the physical impairments, the ALJ summarized these opinions and found them partially persuasive as somewhat consistent with the treatment records, noting impaired sensory reflexes and

motor skills, and the ALJ stated that he further limited the claimant's RFC for the same reasons (Tr. 21-22). The ALJ then summarized the opinions of the state reviewing physicians on the claimant's mental impairments and found them to be persuasive as they were consistent with the medical record showing the claimant had grossly normal mental status from December 2016 through May 2020 (Tr. 22). The ALJ then summarized Dr. Ward's consultative examination and found it partially persuasive as it was consistent with records that note the claimant had normal insight and judgment on some occasions but memory impairment and anxiety on others (Tr. 22). As for the second consultative examiner, Dr. Lynn, the ALJ summarized his opinion and found it partially persuasive because Dr. Lynn used objective testing but indicated it was unclear whether the claimant put forth her best effort and because the claimant alleged having no problems getting along with other individuals including authority figures (Tr. 23). The ALJ noted that Dr. Lynn was unable to come to a conclusion as to why the claimant had no motivation and could not concentrate on many of the tests (Tr. 23). Taking all of this into account, the ALJ found that Dr. Lynn's opinion was inconsistent with her grossly normal mental states throughout the record, citing to records noting when she was awake, alert, and oriented with normal speech and no confusion, but also to one instance, in September 2019, of the claimant experiencing mildly impaired short-term memory (Tr. 23).

Lastly, the ALJ summarized the three separate opinions of Ms. Brewer, the nurse practitioner (Tr. 23-25). The ALJ found her first opinion, pertaining to the claimant's daily limitations affecting her ability to work, to be mostly unpersuasive as determinations of ability to work are reserved to the Commissioner and a functional assessment was not

included (Tr. 23). He found this opinion to be inconsistent with the medical record because the claimant had reported no seizures for a long period of time prior to the alleged on-set date and because objective testing did not account for her neurological symptoms and did not indicate that she was depressed (Tr. 23-24). As to Ms. Brewer's second opinion, relating to the claimant's physical limitations, the ALJ found this opinion to be partially persuasive as Mrs. Brewer was a treating source but noted she did not complete a functional assessment to support the opinion (Tr. 24). The ALJ concluded that the opinion was inconsistent with the record, citing treatment records demonstrating normal balance, gait, and motor skills with no sensory deficits or abnormalities, although on occasion she had decreased motor skills on her right side, as well as the records indicating the clamant was not fully participating in her treatment (Tr. 24). As to Ms. Brewer's final opinion, the ALJ found it to be mostly unpersuasive as Ms. Brewer did not include a functional assessment to support her opinion (Tr. 24). The ALJ found this part of Ms. Brewer's opinion to be inconsistent with the record where she had no problems with gait, speech, or vision throughout and further finding it unsupported by Ms. Brewer's largely normal examination of the claimant during her latest visit in May 2020 (Tr. 24).

The claimant first contends that the ALJ improperly assessed her RFC because he did not consider her combined impairments and improperly analyzed the medical evidence of record. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96–8p

because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ provided a narrative discussion of the evidence, including the treatment records pertaining to the claimant's severe and non-severe impairments, the claimant's daily living and functioning, and all medical opinions in the record. The ALJ discussed the medical records pertaining to each of the severe and non-severe impairments by citing to the records of the claimant's reports of seizure activity and the medical findings after each incident—including some instances of sensory or motor deficits and other instances of normal motor skills and gait—and the claimant's reports of anxiety. The ALJ thoroughly summarized the claimant's subjective testimony as to the claimant's daily functions and the limitations she experiences. In discussing each of the medical opinions, the ALJ referred to evidence of both the severe and non-severe impairments when he drew his conclusions as to the persuasiveness of each. In concluding that the claimant can perform light work, the ALJ even provided additional physical limitations—the claimant can never climb ladders, ropes, or scaffolds and can only frequently reach, handle, and finger with the right upper extremity—not found by the state reviewing physicians. Furthermore, the claimant has pointed to no medical documentation providing further limitations. Because she points to no evidence other than her own assertions, the undersigned Magistrate Judge declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow'

gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

The undersigned Magistrate Judge finds that the ALJ specifically noted the various relevant findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record *and still concluded* that she could perform light work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The undersigned Magistrate Judge finds that when all the evidence is taken into account, the conclusion that the claimant could perform the RFC stated above is well supported by substantial evidence. The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g.*, *Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Next, the claimant contends that the ALJ improperly analyzed the consistency of Dr. Ward and Ms. Brewer's opinions, as well as improperly analyzed both the consistency and the supportability of Dr. Lynn's opinion. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Generally, the ALJ is not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the

evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ thoroughly summarized the opinions of Dr. Ward, Dr. Lynn, and Ms. Brewer and the supportability and consistency of each.

For Dr. Ward, the ALJ found the opinion to be only partially persuasive, in doing so he compared Dr. Ward's opinion to the basis of his opinion as well as the treatment notes of record. In particular, the ALJ noted that Dr. Ward found the claimant's extremely low cognitive assessment to be difficult to reconcile with ever having the ability work. Additionally, the ALJ cited to treatment notes pertaining to instances of normal mental status, while also acknowledging the few instances of memory impairment, to support his analysis. For Dr. Lynn, the ALJ questioned the supportability of her conclusion, because Dr. Lynn was unsure why the claimant experienced motivation and concentration issues. The ALJ nonetheless compared the consistency of Dr. Lynn's conclusions with the treatment notes, such as those suggesting the claimant had normal mental status and those suggesting the claimant's memory was impaired.

Lastly, for Ms. Brewer, the ALJ thoroughly summarized each of Ms. Brewer's three opinions, then included a discussion of supportability and consistency on each. The ALJ found that Ms. Brewer's opinion on the claimant's inability to work was not supported by her own findings of normal mental status at various points in the record and was inconsistent with treatment records showing normal brain scans, periods of time without seizures, and testing indicating she was not depressed. For Ms. Brewer's second opinion, the ALJ acknowledged that Ms. Brewer did not complete a functional assessment to support her conclusions on the claimant's physical limitations and again compared the

overall consistency of the opinion with the treatment records pointing to the claimant's seizure symptoms, which included both instances of normal examinations and some examinations where motor skill and memory deficits were present. Lastly, the ALJ analyzed the consistency of Ms. Brewer's opinion on the work the claimant is capable of by comparing it to the treatment records that suggest the claimant had no indication of problems with gait, speech, or vision as Ms. Brewer concludes. Additionally, the ALJ analyzed the supportability of this opinion by concluding that Ms. Brewer's conclusions were not supported by her normal examination findings and by the absence of a functional assessment.

In finding the claimant disabled, the ALJ addressed both consistency and supportability factors of each of the opinions at issue. Further, the ALJ addressed the evidence in the record in an objective manner—pointing out evidence which supports his position and evidence favorable to the claimant. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") [citation omitted]. Accordingly, the undersigned Magistrate Judge finds that the ALJ's treatment of the various treating and consultative physicians was appropriate and therefore sufficiently clear for the undersigned to determine the weight he gave to the opinion, as well as

sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions . . . . Nothing more was required in this case.").

Next, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as it relates to her seizures and symptoms therefrom. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Soc. Sec. Rul. 16–3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).[3] Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g.*, *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166–67 (*citing Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration,

---

[3] SSR 16–3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96–7p, 1996 WL 374186 (July 2, 1996). *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). SSR 16–3p eliminated the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16–3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g.*, *Paulek v. Colvin*, 662 Fed. Appx. 588, 593–594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545–546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304, at *7–8. An ALJ's symptom evaluation is entitled to deference unless the undersigned Magistrate Judge finds that the ALJ misread the medical evidence as a whole. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

    As outlined above, the undersigned Magistrate Judge finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were linked to the evidence in the record. Specifically, the ALJ noted that after many of the instances where the claimant complained of seizure activity that caused her to be confused, to be dizzy, and have impaired memory, CT and MRI scans of her brain were found to be normal. Additionally, the ALJ noted that although on a few occasions the claimant experienced weakness and other motor deficits in her arms

and legs, she often had no sensory deficits. Particularly, the ALJ noted that at the claimant's most recent appointment, she was not experiencing such deficits. The ALJ further acknowledged that the claimant had been treated for anxiety, but only by a primary care provider. The claimant contends that the ALJ improperly ignored every instance in which she reports confusions, anxiety, dizziness, or memory impairment, but this is not borne out by the record. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is therefore entitled to deference. *See Casias*, 933 F.2d at 801. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 15th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**